ROBERT S. BREWER, JR.
United States Attorney
KATHERINE E. A. MCGRATH
Assistant United States Attorney
California Bar No. 287692
U.S. Attorney's Office
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9054
Email: katherine.mcgrath@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC JORDAN TEODULO PINNICK,<br><br>Defendant. | Case No. 19-CR-714-DMS<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO COMPEL DISCOVERY AND GRANT LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 5, 2019<br>Time: 11:00 a.m. |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Katherine E. A. McGrath, Assistant United States Attorney, and hereby files its Response in Opposition to the above-referenced motions. This briefing is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

## I.
## STATEMENT OF THE CASE

Defendant is facing a prosecution under 21 U.S.C. §§ 952, 960. He was arrested on February 1, 2019 at the Otay Mesa, California Port of Entry after 27.22 kilograms of methamphetamine, 1.20 kilograms of heroin, 2.3 kilograms of cocaine, and 3.58 kilograms of fentanyl were located in his car. On February 28, 2019, Defendant waived indictment and pled not guilty to an information charging him with importation of methamphetamine, heroin, cocaine, and fentanyl, in violation of 21 U.S.C. §§ 952, 960.

## II.
## STATEMENT OF FACTS

On February 1, 2019, defendant entered the United States from Mexico at the Otay Mesa, California Port of Entry. He was the driver, sole occupant and registered owner the car he was in. He gave negative customs declarations. During a pre-primary inspection, Customs and Border Protection Officers (CBPOs) discovered a package inside the driver side dash board, and Defendant was sent to secondary inspection. In secondary inspection, CBPOs discovered thirty-one (31 ). packages under the seats and ten ( 10) packages within the dashboard. Thirty-five (35) packages contained a clear crystal-like substance which field-tested positive for the characteristics of methamphetamine. The total weight of the thirty-five (35) packages was approximately 17.96 kilograms (39.59 pounds). The CBPO also discovered and removed three (3) packages weighing approximately 3.58 kilograms (7.89 pounds) of a substance which field-tested positive for the characteristics of fentanyl. The CBPO removed two (2) packages weighing approximately 2.3 kilograms (5.07 pounds) of a substance which field-tested positive for cocaine. The last package removed weighed approximately 1.20 kilograms (2.65 pounds) of a substance which field-tested positive for heroin. A total of forty-one ( 41) packages were removed from the vehicle on February 1, 2019. On February 2, 2019 at approximately 5:30 p.m., a CBPO and his Narcotics/Human Detector Dog (NHDD) were in the secondary inspection lot and the

NHDD alerted to near the heater core area of the vehicle. The CBPO removed the cabin air filter and discovered packages concealed within. Around 7:30 p.m., another CBPO conducted an inspection of Defendant's vehicle and discovered nineteen (19) additional packages within the firewall and heater core area. The packages contained a white substance which field-tested positive for the characteristics of methamphetamine weighing approximately 9.26 kilograms (20.41 pounds). In total, sixty (60) packages were removed from the vehicle.

### III.
### ARGUMENT

**A. Motion to Compel Discovery**

The United States has produced approximately 153 pages of discovery and a DVD containing Defendant's post-arrest interview. The investigation into this case in ongoing and new discoverable material may be obtained or generated. The United States will continue to provide additional discovery as it is identified or becomes available. Additionally, the United States will meet and confer with defense counsel to attempt to resolve any discovery disputes that arise. The United States will schedule a viewing of any evidence seized at a time mutually agreed upon by the parties. Port videos have been requested.

The United States recognizes and acknowledges its obligation pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), the Jencks Act, and Rules 12 and 16 of the Federal Rules of Criminal Procedure. The United States will continue to comply with its discovery obligations going forward. As to exculpatory information, the United States is aware of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) and will comply. The United States will also produce any evidence of bias/motive, impeachment, or criminal investigation of any of its witnesses of which it becomes aware. An inquiry pursuant to *United States v. Henthorn*, 931 F.2d 29 (9th Cir.

1991) will also be conducted. The United States has already provided information within its possession or control pertaining to the prior criminal history of Defendant.

Of note, Defendant moves for discovery for:

> any and all information that the government intends to introduce at trial—through an expert or otherwise—regarding the structure and modus operandi of drug trafficking organizations…information or documentation in the government's possession regarding drug trafficking organizations' use of unknowing couriers. The government has engaged in interrogations, debriefs, investigations, and other methods to determine various methods used by drug trafficking organizations to import narcotics into the United States. Mr. Pinnick requests any such information that indicates in any way that drug trafficking organizations have sought to cross narcotics by hiding narcotics in the vehicles driven by people who were unaware of the narcotics.

Mot. at 4. Defendant asserts that he is entitled all of the above-mentioned discovery under *Brady* and Rule 16 as interpreted in *United States v. Stever*, 630 F.3d 747 (9th Cir. 2010). Defendant's fishing expedition should be denied. In *United States v. Stever*, the Ninth Circuit held that a defendant charged with manufacture of marijuana and conspiracy to commit the same was entitled to certain discovery related to the operations of Mexican Drug Trafficking Organizations ("DTO's"). Central to the Ninth Circuit's holding was the fact that Defendant had made "several offers of proof to substantiate the arguments made in his discovery motions and in his motion *in limine*." 603 Fd.3d 747, 752 (9th Cir. 2010).

In *Stever*, the named defendant sought pre-trial discovery of reports in the government's possession describing the "characteristics, modus operandi, and other information regarding" Mexican DTO's involved with growing marijuana. The Ninth Circuit found that Stever was entitled to the discovery he sought because he made the following offers of proof substantiate his arguments:

> He cited news reports of hunters and landowners stumbling across the marijuana operations of Mexican DTOs trespassing on public and private lands in Northern California and a report of the National Drug Intelligence Center explaining that increased eradication efforts in California had spurred Mexican DTOs to move into Eastern Oregon. He proffered the internal law enforcement communication apparently obtained through prior discovery, which identified a similar operation on federal land in Oregon as the likely work of a Mexican DTO. He also proffered a defense expert who would testify that DTO operations typically excluded local Caucasians.

*Id.* The Ninth Circuit ruled that based on Stever's offer of proof, he was entitled to the requested discovery under Rule 16 and noted multiple times that the Government never denied being in possession of the requested discovery. Unlike the defendant in *Stever*, Defendant has not made any showing of materiality to justify his extremely broad and far-reaching discovery requests across multiple federal agencies other than to assert that these items are material to the preparation of his defense. Furthermore, the requested discovery in *Stever* would have rebutted the United States' argument that Stever conspired with the Mexican DTO's to manufacture marijuana on his property because according to Stever's proffered defense expert, DTO operations "typically excluded local Caucasians" like himself. *Id.* Defendant has not made any showing of materiality to suggest a similar relevance in his case.

Indeed, unlike other cases in which Defendants have claimed that they were the victims of some elaborate scheme (via advertisements or the like) perpetrated by drug trafficking organizations that would warrant such broad disclosure into all claimed "unknowing" couriers, Defendant instead suggests that his supposed roommate, Jorge, set him up. The United States will comply with its discovery obligations with respect to any information obtained from its investigation into the story Defendant provided to agents during his post-arrest, including any investigation into Jorge Alarcon-Escudillo. *Soto-Zuniga* requires no more. 837 F. 3d 992 (9th Cir. 2016). In *Soto-Zuniga,* the defendant was charged with possession of methamphetamine with intent to distribute. The defendant

claimed that his cousin's husband, Christian Rios Campos, had called the morning of his arrest and asked him to give three teenagers a ride from Otay mesa to San Ysidro. 837 F. 3d at 996. An investigator for the defense obtained a social security number for Marisol Diaz, the defendant's cousin and the wife of Christian Rios Campos. The investigator then got an arrest warrant for Diaz, which included a declaration from a Homeland Security Investigations agent that the government had arrested three teenagers on suspicion of trafficking drugs at the command of Rios. Defense counsel argued that this new information corroborated defendant's account of events and requested discovery on the government's investigation of Rios and Diaz. This Court denied that motion, and the Ninth Circuit reversed. It noted that it was "possible that discovery about the investigation might help [defendant] identify the teenagers to whom he gave a ride… [who] might then provide direct testimony on whether one or more of them placed drugs in the car of [defendant] without his knowledge...[The defendant's] defense was that the contraband must have been left in his car by the teenagers to whom he gave a ride because he knew nothing about it. If the persons are identified, they could potentially either support or contradict [defendant's] claim." *Id.* at 1003. Providing Defendant with any discovery in the government's possession related to its investigation of "Jorge" provides Defendant with sufficient information to assist in "formulating a defense, including leading to admissible evidence." *Id.* Nothing more is required.

Defendant requests several deadlines for the timing of the United States' production of discovery and other materials. The United States will make every effort to make timely disclosures. But Defendant's timelines may not always be feasible or reasonable under the circumstances. The United States therefore opposes any bright line cut-offs for the production of discovery and other materials and respectfully requests the Court to deny all requests for such deadlines at this time.

**B. Motion for Leave to File Further Motions**

The United States does not object to Defendant's motion for leave to file further

motions so long as those motions are based on new information received by Defendant.

## IV.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny Defendant's motions where opposed.

DATED: March 29, 2019                    Respectfully submitted,

ROBERT S. BREWER, JR.
United States Attorney


*/s/Katherine E. A. McGrath*
KATHERINE E. A. MCGRATH
Assistant United States Attorney